NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the
# Supreme Court of Georgia

No. S26A0035
Tony Rucker
v.
The State

No. S26A0036
Aaron Simmons
v.
The State

On Appeal from the Superior Court of Fulton County
No. 15SC137245

Decided: June 30, 2026

PETERSON, Chief Justice.

Tony Rucker and Aaron Simmons appeal their convictions related to the robbery and murder of Deontavious Wright. On appeal, Rucker argues that (1) there was insufficient evidence to support his convictions for cruelty to children in the third degree, (2) the trial court erred in admitting certain out-of-court statements because those statements were inadmissible hearsay, and (3) the trial court erred in denying his motions to sever. Simmons argues that the evidence was generally insufficient as to his convictions. Regarding Rucker's claims, we conclude that the evidence was sufficient to support Rucker's convictions for cruelty to children in the third degree; one set of the alleged hearsay statements was harmless, a second set (reviewed only for plain error) did not affect the trial's outcome, and the trial court

did not abuse its discretion in admitting the third set; and Rucker has failed to demonstrate that the trial court abused its discretion when it denied his motions to sever. And we reject Simmons's argument that the evidence was insufficient. Accordingly, we affirm.[1]

---

[1] The crimes occurred on March 13, 2015. On August 28, 2015, a Fulton County grand jury indicted Rucker, Simmons, and co-defendant Larry Ivory with the malice murder of Deontavious Wright (Count 1), felony murder of Deontavious predicated on home invasion, armed robbery, aggravated assault with a deadly weapon, and burglary (Counts 2, 3, 4, and 5), home invasion (Count 9), armed robbery of Deontavious (Count 10), aggravated assault with a deadly weapon of Deontavious (Count 11), aggravated assault with a deadly weapon of Sharonte Wright (Count 12), burglary (Count 13), cruelty to children in the third degree involving J.D. and T.B. (Counts 14 and 15), and possession of a firearm during the commission of a felony (Count 16). Rucker was charged separately with the felony murder of Deontavious predicated on possession of a firearm by a first offender probationer (Count 7) and possession of a firearm by a first offender probationer (Count 18). Simmons was charged separately with the felony murder of Deontavious predicated on possession of a firearm by a convicted felon (Count 8) and possession of a firearm by a convicted felon (Counts 19 and 20). Ivory was also charged with the felony murder of Deontavious predicated on possession of a firearm by a first offender probationer (Count 6) and possession of a firearm by a first offender probationer (Count 17).

At a joint jury trial held from November 7 to 17, 2016, Rucker and Simmons were found guilty on all counts except the aggravated assault of Sharonte. And Count 20 against Simmons for possession of a firearm by a convicted felon was nolle prossed. Ivory was found guilty of all counts except the malice murder of Deontavious (Count 1) and the aggravated assault of Sharonte (Count 12). The trial court sentenced Rucker to serve life in prison on Count 1, ten years in prison for home invasion on Count 9, ten years on Count 10, 12 months on Counts 14 and 15, five years on Count 16, and five years on Count 18. The remaining counts merged or were vacated by operation of law. The trial court sentenced Simmons to serve life in prison on Count 1, ten years on Count 9, ten years on Count 10, 12 months on Counts 14 and 15,

1. As recounted in co-defendant Larry Ivory's appeal, *Ivory v. State*, 322 Ga. 315 (2025), the evidence at trial showed the following:

> In March 2015, Deontavious lived in an apartment with his brother Sharonte Wright, his friend John Davis, and John's sister Kiana Davis. Deontavious often sold drugs out of the apartment. On the morning of March 13, 2015, the four roommates were at the apartment with Deontavious's girlfriend's three-year-old child T.B., Kiana's four-

---

five years on Count 16, and five years on Count 19. The remaining counts merged or were vacated by operation of law. The trial court sentenced Ivory to life in prison for the felony murder of Deontavious predicated on home invasion (Count 2), ten years in prison for the armed robbery of Deontavious (Count 10), ten years in prison for the aggravated assault with a deadly weapon of Deontavious (Count 11), 12 months in prison for each count of cruelty to children (Counts 14 and 15), five years in prison for possession of a firearm during the commission of a felony (Count 16), and five years in prison for possession of a firearm by a first offender probationer (Count 17). The remaining counts merged or were vacated by operation of law.

Rucker timely filed a motion for new trial on December 2, 2016, which was amended on May 27, 2020. Simmons timely filed a motion for new trial on December 22, 2016, which was amended by Simmons without counsel on July 29, 2019, and again by appellate counsel on October 7, 2020. On January 29, 2025, the trial court denied Rucker's and Simmons's motions for new trial. Rucker and Simmons filed timely notices of appeal. Their cases were docketed to the term of this Court beginning in December 2025 and submitted for decisions on the briefs. We have already affirmed Ivory's convictions. See *Ivory v. State*, 322 Ga. 315 (2025).

Given the eight-year delay in resolving the motions for new trial, we once again observe that "it is the duty of all those involved in the criminal justice system, including trial courts and prosecutors as well as defense counsel and defendants, to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay." *Owens v. State*, 303 Ga. 254, 258 (2018).

3

year-old child J.D., and the mother of John's children, Chanteka Lynch. A woman knocked on the door, Deontavious opened the door, and the three co-defendants, Rucker, Simmons, and Larry Ivory, pushed past the woman into the apartment.

Rucker entered the apartment and pointed a gun at Deontavious's chest; meanwhile Simmons and Ivory stood guard at the front door. Rucker demanded Deontavious empty his pockets and took Deontavious's drugs and money. Rucker then forced Deontavious into the bedroom where Kiana and J.D. were and demanded that Kiana turn over any drugs and money. Kiana told Rucker that she did not have any drugs or money. Rucker then forced Deontavious back to the living room to retrieve Deontavious's gun; John, Sharonte, Lynch, and T.B. were in that room. After Deontavious retrieved his gun and handed it over, Rucker shot Deontavious multiple times.

After the shooting ceased, Rucker, Simmons, and Ivory ran out of the apartment. Kiana called the police, and officers were dispatched to the area at around 10:21 a.m. Deontavious died at the scene.

Id. at 316–17 (cleaned up). At trial, John and Lynch testified that only Ivory was wearing a face covering. And John, Sharonte, Lynch, and Kiana all testified that they recognized Rucker and Simmons from seeing them in the apartment complex, and each of those four witnesses identified Rucker in photo lineups or at trial. The same four witnesses also testified that Rucker shot Deontavious. And John, Sharonte, and Lynch testified that

4

Simmons told Rucker to shoot Deontavious before he did so.

Sharonte testified that Rucker was wearing a hood, but when he shot Deontavious, Rucker's hood came off and Sharonte "could see exactly who he was." Sharonte also testified that Simmons came into the apartment first with the gun, and that Rucker then took the gun from Simmons.

*Case No. S26A0035*

2. Rucker argues that the State's evidence is insufficient under both constitutional due process and OCGA § 24-14-6 to sustain his convictions for cruelty to children in the third degree. We disagree.

When reviewing the sufficiency of the evidence as a matter of constitutional due process, we view the evidence in the light most favorable to the verdicts and inquire whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 US 307 (1979). "In conducting that evaluation, it is not the job of this Court to weigh the evidence on appeal or resolve conflicts in trial testimony." *Ivory*, 322 Ga. at 317 (quotation marks omitted).

"Child cruelty in the third degree is committed when a primary aggressor either intentionally or knowingly allows a child to see or hear the act of committing a 'forcible felony.'" *State v. Owens*, 312 Ga. 212, 222 (2021) (quoting OCGA §16-5-70(d)(1)–(2)). The evidence in this case was sufficient to sustain Rucker's convictions for cruelty to children in the third degree both as a matter of constitutional due process and Georgia statutory law.

Here, multiple eyewitnesses identified Rucker as the shooter. And those same eyewitnesses testified that T.B. and J.D., who were three years old and four years old, respectively, were at the apartment — which detectives described as "very small" —

5

when the robbery and shooting occurred. John testified that the co-defendants "entered the house with a gun to [Deontavious's] chest." Sharonte testified that Simmons came into the apartment first with the gun but that when Rucker took the gun from Simmons, Rucker pointed it at Deontavious and told him to go to the bedroom. Kiana testified that when Rucker came into the bedroom where she and J.D. were, Rucker was pointing the gun at Deontavious. Although there was testimony that Kiana had placed J.D. under the bed covers or in the closet when the shooting occurred, eyewitnesses also testified that J.D. was aware of the aggravated assault: specifically, that he warned his mother that there was "a boy in [the] living room with a gun[,]"and that he told Rucker, "[y]ou better not shoot my mama with that big ole gun." And there was testimony that T.B. was in the living room when Rucker forced Deontavious back into the living room to retrieve Deontavious's gun.

To the extent Rucker argues that the State was required to call the victims as witnesses or to elicit testimony from the witnesses that the children heard the commission of the forcible felonies, he is incorrect. There was sufficient evidence from which the jury could infer that the children saw, at the very least, the aggravated assault, a forcible felony.[2] See *Owens*, 312 Ga. at 222–23 (holding evidence was sufficient to support the defendant's conviction for child cruelty in the third degree where the defendant "loaded three children into the minivan who were then present at close quarters when Owens shot [the victim]" inside the minivan, because even if the children had been sleeping, the jury was authorized to conclude that the gunshot would have

---

[2] "[A]n aggravated assault is, among other things, an assault '[w]ith a deadly weapon.'" *Lee v. State*, 322 Ga. 44, 58 (2025) (quoting OCGA § 16-5-21(a)(2)).

woken them); *Dennard v. State*, 305 Ga. 463, 465–66 (2019) (holding evidence was sufficient to support the defendant's conviction for child cruelty in the third degree where "there was evidence presented that [the defendant] was playing with the children in the living room near the front door before he followed [the victim] out that door and … the shooting took place in the front yard, just feet from the apartment").

In arguing that the evidence was insufficient, Rucker points to *McCluskey v. State*, 307 Ga. 740 (2020). But that case does not apply. In *McCluskey*, the Court held that the evidence was insufficient to support the defendant's convictions for cruelty to children in the third degree where one child specifically denied hearing a gunshot and the other child testified that she "was upstairs in her room wearing headphones when the shooting happened [downstairs], and that she did not know anything was wrong until her brother came upstairs and told her." Id. at 743–44. The Court explained that under OCGA § 16-5-70(d)(2), the child must "see or hear *the act* of committing the underlying offense, not its aftermath." Id. at 743. Here, unlike *McCluskey*, there was ample eyewitness testimony from which a jury could reasonably conclude that the children witnessed the aggravated assault.

As to the sufficiency of the evidence under Georgia statutory law, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. "But this statute does not apply if the State presents any evidence of direct guilt." *Montgomery v. State*, 323 Ga. 188, 191 (2025). And "[e]yewitness testimony based on [a] witness's firsthand observations of the crime is direct, not circumstantial

7

evidence." *Douglas v. State*, 321 Ga. 739, 747 (2025) (quotation marks omitted). Here, the eyewitness testimony that Rucker pointed the gun at Deontavious and that J.D. made statements demonstrating he was aware of the aggravated assault constitutes direct evidence of guilt, so OCGA § 24-14-6 does not apply. See *Montgomery*, 323 Ga. at 191 (OCGA § 24-14-6 did not apply where the State presented direct evidence in the form of eyewitness testimony that the defendant shot the victim); *Douglas*, 321 Ga. at 747–48 (OCGA § 24-14-6 did not apply where an eyewitness testified that "[i]t looked like the driver was trying to push the passenger out" of a moving truck and the defendant "admitted at trial that he was the driver of the truck"). Accordingly, Rucker's sufficiency claim fails.

3. Rucker argues that the trial court erred in admitting three sets of out-of-court statements because the statements were inadmissible hearsay: (a) Genesis Woodard's testimony recounting what Simmons told her after the robbery and shooting; (b) Detective Scott Berhalter's testimony recounting what Woodard told him about what Simmons told Woodard; and (c) jail calls from Simmons to Woodard and from Ivory to April Battle. For the reasons explained below, these claims fail.

(a) *Woodard's testimony recounting what Simmons told her after the robbery and shooting.*

We conclude that any error by the trial court in admitting Woodard's testimony about what Simmons told her after the robbery and shooting was harmless.

At trial, Woodard testified about a face-to-face conversation that she had with Simmons in May of 2015 — after the robbery and when Simmons was living with Woodard. Woodard testified that Simmons told her that "he didn't kill

8

nobody" and "[i]t was just a robbery that went wrong." When asked if Simmons told Woodard whom he was with, Woodard testified that "he didn't tell me who he was with. Well, the streets told me who he was with." Woodard also testified that Simmons did not tell her who had planned the robbery. And when asked by the prosecutor, "You don't remember telling Detective Berhalter that [Simmons] was with [Ivory]?" Woodard replied, "No." Woodard also testified that Simmons said he was friends with Rucker. At trial, the court found that Woodard's testimony about what Simmons told her after the shooting was admissible under the co-conspirator exception to hearsay. See OCGA § 24-8-801(d)(2)(E) ("Rule 801(d)(2)(E)") (providing that "[a] statement by a coconspirator of a party during and in furtherance of the conspiracy, including a statement made during the concealment phase of a conspiracy" shall "not be excluded by the hearsay rule").

"In determining whether the error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so. The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." *Kitchens v. State*, 310 Ga. 698, 702 (2021). "Further, the erroneous admission of hearsay is harmless where substantial, cumulative, legally admissible evidence of the same fact is introduced." *Head v.* State, 316 Ga. 406, 417 (2023) (quotation marks omitted).

Viewing the record in this way, the other evidence presented at trial shows that any error in allowing Woodard to testify about Simmons's statements was harmless as to Rucker. As detailed above, multiple eyewitnesses placed Rucker at the scene as the shooter. Two eyewitnesses — John and Lynch — testified that only Ivory was wearing a face covering. And four

9

eyewitnesses — John, Sharonte, Lynch, and Kiana — all testified that they recognized Rucker from seeing him in the apartment complex and that Rucker shot Deontavious. Those same four witnesses identified Rucker in photo lineups or at trial. And Sharonte testified that Rucker was wearing a hood, but when he shot Deontavious, Rucker's hood came off and Sharonte "could see exactly who he was." Further, Woodard's testimony only directly implicated Simmons and Ivory, not Rucker. When asked whether she remembered telling Detective Berhalter that Simmons was with Ivory, Woodard responded, "No." This statement did not directly name Rucker as being involved in the robbery. Instead, the only explicit mention of Rucker by Woodard in her testimony was that Rucker and Simmons were "[f]riends."

Given (1) the overwhelming evidence from other witnesses' testimony that Rucker was the shooter and (2) the fact that Woodard's testimony did not directly implicate Rucker as being involved in the robbery, any error in allowing Woodard to testify about her conversation with Simmons was harmless. See *Stafford v. State*, 312 Ga. 811, 822–23 (2021) (holding that although the trial court abused its discretion in admitting hearsay statements under the co-conspirator exception, the error was harmless given the other strong evidence of the appellant's guilt and the fact that the hearsay statements "were not especially prejudicial" because they did not, among other things, "directly implicate" the appellant).

(b) *Detective Berhalter's testimony recounting what Woodard told him that Simmons told Woodard.*

Detective Berhalter's testimony recounting what Woodard told him that Simmons told her did not affect the outcome of Rucker's trial, so we conclude that the court did not plainly err in allowing this testimony.

10

Detective Berhalter, the lead detective on the case, testified at trial (after Woodard's testimony) regarding a conversation that he had with Woodard in August of 2015. Detective Berhalter testified that Woodard told him that Simmons told her that he played a part in the robbery to get money for his family and that he "didn't know it was going to be a murder." Detective Berhalter also testified that Woodard told him that Simmons told Woodard that he was with Ivory and Rucker, and that Ivory had set up the robbery. Ivory and Simmons objected to this testimony, but Rucker did not. The trial court determined in its order denying Rucker's amended motion for new trial that Detective Berhalter's testimony was admissible as a prior inconsistent statement. See OCGA §§ 24-8-801(d)(1)(A) and 24-6-613(b).

Because Rucker did not object to Detective Berhalter's testimony on hearsay grounds, plain error review applies. See *Jennings v. State*, 318 Ga. 579, 587 (2024). To show plain error, Rucker "must identify an error that was not affirmatively waived, was obvious beyond reasonable dispute, affected the outcome of his trial or otherwise affected his substantial rights, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Sconyers v. State*, 318 Ga. 855, 859 (2024). "This Court does not have to analyze all elements of the plain-error test where an appellant fails to establish one of them." *Jennings*, 318 Ga. at 587. Here, Rucker has failed to show that the error probably did affect the outcome below. See id.

As explained in Division 3(a), the evidence of Rucker's involvement in the robbery and shooting — in the form of eyewitness testimony identifying Rucker as the shooter — was strong. And Detective Berhalter's testimony implicating Rucker as being involved in the robbery and shooting was cumulative of

11

the other evidence at trial. Given the other strong evidence of Rucker's guilt and the fact that Detective Berhalter's testimony as to Rucker was merely cumulative of that other evidence, Rucker has failed to show that Detective Berhalter's testimony probably affected Rucker's outcome below. Accordingly, the trial court did not plainly err in allowing the testimony. See *Jennings*, 318 Ga. at 586–88 (holding that the trial court did not plainly err in admitting alleged hearsay evidence where the defendant failed to show that the admission of alleged hearsay evidence likely affected the outcome of the trial given the other strong evidence at trial). See also *Davis v. State*, 302 Ga. 576, 584 (2017) (concluding that even if there was error in admitting alleged hearsay evidence, it was harmless because it was cumulative of other testimony at trial that the appellant was the shooter).

(c) *Jail calls from Simmons to Woodard and from Ivory to Ivory's girlfriend.*

The trial court did not clearly err in determining that the statements made in the jail calls were made during and in furtherance of a conspiracy.

"To admit evidence under Rule 801(d)(2)(E), the State is required to show by a preponderance of the evidence that a conspiracy existed, the conspiracy included the declarant and the defendant against whom the statement is offered, and the statement was made during the course and in furtherance of the conspiracy." *Kemp v. State*, 303 Ga. 385, 392 (2018). "[A] conspiracy consists of an agreement between two or more persons to commit a crime." *Jones v. State*, 305 Ga. 750, 752. "However, a conspiracy may be established when conduct discloses a common design, even without proof of an express agreement between the parties." *Davis*, 302 Ga. at 583. And "a conspiracy does not necessarily end upon the achievement of its object." *Kemp*, 303

12

Ga. at 392. But "[a] retrospective statement regarding matters that have already occurred, and that is not intended to foster involvement in the conspiracy, is not a statement in furtherance of the conspiracy." *State v. Wilkins*, 302 Ga. 156, 159–60 (2017) (quotation marks omitted). In other words, "a statement that merely 'spill[s] the beans,' discloses the scheme, or informs the listener of the declarant's activities does not constitute a statement in furtherance of the conspiracy." *State v. Lane*, 308 Ga. 10, 20 (2020) (citing *Wilkins*, 302 Ga. at 159–60)

We review the trial court's evidentiary rulings under Rule 801(d)(2)(E) for an abuse of discretion, and we accept the trial court's factual findings on whether the statements were made during the course and in furtherance of a conspiracy unless they are clearly erroneous. See *Lane*, 308 Ga. at 20.

At trial, the trial court admitted recordings of two jail calls into evidence over Rucker's hearsay objections, which were played during the trial and at the jury's request during deliberations. In one jail call, Simmons spoke to Woodard, admonishing Woodard for speaking to police and stating that she was going to cause him to receive a life sentence. Simmons also told Woodard that "they're saying I'm part of the crime … I ain't gotta kill the n***a, I was still there … I was still there … that mean I'm getting charged with murder at the same time so I'm part of the crime." Simmons also told Woodard on the jail call, "Why, why, why … You [unintelligible] come out your mouth say nothing bruh, you wasn't there, I wasn't there … I told them folks this"; Simmons also threatened to commit suicide and told Woodard, "Don't say s**t to me, don't f**k with me."

In the other jail call, the recording of which is difficult to understand and only part of which was played for the jury, Ivory spoke to his girlfriend, Battle. This call took place while Ivory was

13

in custody but before Simmons had been arrested. During the call, Ivory seemed to ask Battle what she did with the "fire," and she seemed to express to Ivory that "Tite" or "Ty" helped her in some way.

The trial court gave a limiting instruction before the jail calls were admitted, stating that each call "is admissible only against the person who made the statement." The trial court also gave a broad limiting instruction in the final charge to the jury, explaining that "[a]ny out-of-court statement made by one of the defendants on trial in this case after the alleged criminal act has ended may be considered only against the person who made the statement and only if you find that such statement was freely and voluntarily made." The trial court determined in its order denying Rucker's amended motion for new trial that the jail calls were admissible under Rule 801(d)(2)(E), the co-conspirator exception to hearsay.[3]

As to Simmons's jail call with Woodard, viewing Simmons's statements as a whole, they support the inference that he was attempting to dissuade Woodard from speaking to the police again or testifying at trial. And as to Ivory's call, Ivory seemed to

---

[3] Given the limiting instructions and the fact that the calls were admissible against Rucker's co-defendants who were on the calls, it is not obvious that the calls were even admitted against Rucker at all. See *Kirkland v. State*, 318 Ga. 639, 655–56 (2024) (holding under plain error review that there was no clear error in the admission of statements made by a co-defendant under Rule 801(d)(2)(E) where the jury was instructed that the co-defendant's out-of-court statements could only be considered against the co-defendant and there was no evidence the jury ignored the instruction or used the evidence for any improper purpose). But the trial court's order on the motion for new trial held that the calls were admissible against Rucker under Rule 801(d)(2)(E), no party argues we should review the calls any other way, and so we limit our analysis to reviewing the trial court's determination in the motion for new trial order.

14

discuss getting rid of the gun. Specifically, Ivory seemed to ask Battle what she did with the "fire," and Battle seemed to express to Ivory that "Tite" or "Ty" helped her in some way. Those statements support the inference that Ivory was attempting to get help from Battle and "Tite" or "Ty" to conceal evidence from the crime.

First, the trial court was authorized to find that a conspiracy to commit the crimes existed based on the conduct of the three co-defendants during the robbery and shooting. Specifically, Rucker, Simmons, and Ivory pushed their way into the apartment at the same time. Simmons came into the apartment first with the gun, and Rucker then took the gun from Simmons. Then, while Rucker threatened Deontavious with the gun, Simmons and Ivory stood guard at the door. And Simmons told Rucker to shoot Deontavious, and Rucker then did so. Thus, the conduct of the co-defendants "disclose[d] a common design" establishing a conspiracy. *Davis*, 302 Ga. at 583 (concluding that there was ample evidence of a conspiracy where the co-indictees discussed committing the robbery just prior to the shootings, each co-indictee had a specific role to play in the robbery, and the co-indictees left the scene together).

Second, contrary to Rucker's arguments that the statements merely "spilled the beans," the trial court was authorized to determine that the statements in the jail calls were made in furtherance of the conspiracy. The trial court could reasonably infer that the statements in the jail calls were made during the concealment phase of the conspiracy[4] in an attempt to

---

[4] Rucker appears to argue that statements made during the "concealment phase" are no longer within the co-conspirator exception to hearsay. That is incorrect. Rule 801(d)(2)(E) "explicitly incorporate[ed] the

15

either prevent witnesses from speaking to the police or testifying at trial or to dispose of evidence of the crimes. So it was not clear error to determine that those statements were made during and in furtherance of the conspiracy. See *Mosley v. State*, 307 Ga. 711, 712–15, 718 (2020) (holding that the trial court was authorized to conclude that jailhouse letters written by a co-indictee "furthered the conspiracy in that it was an attempt to continue to conceal their crimes and avoid prosecution" where the co-indictee wrote a letter asking the recipient of the letter to reach out to a victim of a crime committed by the co-indictee and the appellant to convince the victim not to appear for court).

Accordingly, the trial court did not abuse its discretion in admitting the jail calls.[5]

4. Rucker also argues that the trial court erred in denying his motions to sever. This claim fails.

> A trial court has broad discretion to grant or deny a motion to sever in a murder case in which the death penalty is not sought. When ruling on such a motion, a court should consider: (1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3)

---

rule, established by our case law decided under the former Georgia Evidence Code, that statements 'made during the concealment phase of a conspiracy' are included as part of the co-conspirator exception." *Wilkins*, 302 Ga. at 158–59.

[5] Rucker does not argue that the evidentiary errors we assume for purposes of analysis in this opinion cumulatively resulted in harm. See *Mbungu v. State*, 322 Ga. 564, 569 n.5 (2026) ("Even in the evidentiary context, a defendant who wishes to take advantage of the cumulative error rule should explain to the reviewing court just how he was prejudiced by the cumulative effect of multiple errors." (cleaned up)). For the reasons set forth above, we discern no apparent cumulative error warranting reversal.

the presence or absence of antagonistic defenses. To show that the trial court abused its discretion in denying a motion to sever, a defendant must do more than raise the existence of antagonistic defenses or the possibility that a separate trial would have given him a better chance of acquittal. The defendant must make a clear showing that a joint trial was so prejudicial as to amount to a denial of his right to due process.

*Ivory*, 322 Ga. at 319 (quoting *Saylor v. State*, 316 Ga. 225, 230–31 (2023)) (holding that the trial court did not abuse its discretion in denying Ivory's motion for severance). "A showing that a separate trial merely would give that defendant a better chance of acquittal is insufficient." *Walter v. State*, 304 Ga. 760, 763 (2018).

Rucker argues that the trial court's admission of Simmons's statements to Woodard — which were brought into evidence through Woodard's testimony, Detective Berhalter's testimony, and Simmons's jail call to Woodard — resulted in a risk that that evidence would be wrongly considered against Rucker, and that the admission of that evidence resulted in antagonistic defenses. Like his co-defendant in *Ivory*, Rucker has failed to demonstrate that the joint trial was so prejudicial as to amount to a denial of his rights to due process. See *Ivory*, 322 Ga. at 319–20.

Before trial, Rucker filed a motion to sever based in part on *Bruton*,[6] which he later amended. Just prior to the start of trial, the trial court denied Rucker's amended motion to sever as moot, because the State explained that it intended to introduce only one

---

[6] See *Bruton v. United States*, 391 US 123 (1968).

17

jail call from co-defendant Simmons in which Simmons admonished Woodard for speaking to the police, and the call did not implicate the other defendants. During trial, Rucker renewed his motion to sever multiple times, which the trial court consistently denied.

As we explained in co-defendant Ivory's appeal, "[f]irst, this case involved only three defendants who were tried for largely the same offenses relating to the same incident. The law and the evidence were substantially the same for all of them, and the State argued that the defendants acted together to commit the crimes." Id. (citing *Saylor*, 316 Ga. at 231; *Virger v. State*, 305 Ga. 281, 290–91 (2019)). "The jury was also instructed on mere association, mere presence, and parties to a crime, and it returned a separate verdict for each defendant pursuant to the trial court's instruction, demonstrating that the jury was not confused by the law and the evidence in this case." *Ivory*, 322 Ga. at 320 (quotation marks omitted).

Moreover, even if the trial court erred in allowing some of Simmons's statements to Woodard to be admitted against Rucker, Rucker has failed to show that the admission of such statements resulted in the required level of prejudice. See *Harris v. State*, 304 Ga. 276, 280 (2018) ("It is incumbent upon the defendant who seeks a severance to show clearly that he will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will not be disturbed."). As detailed above, multiple eyewitnesses placed Rucker at the scene as the shooter, testifying that they recognized him from seeing him in the apartment complex and identifying him in photo lineups or at trial. Additionally, the trial court gave a limiting instruction that the jail calls, including Simmons's jail call to Woodard, were only to be considered against the declarant. See *Edwards v. State*, 308

Ga. 176, 182 (2020) ("Qualified jurors under oath are presumed to follow the instructions of the trial court." (citation and quotation marks omitted)).

Given the numerous eyewitnesses who identified Rucker as the person who shot the victim, Rucker has failed to make the required showing of clear prejudicial harm necessary to overturn the trial court's denial of his motions to sever. *Rivers v. State*, 283 Ga. 1, 4 (2008) (holding that the defendant did not "show[] the clear prejudicial harm necessary to overturn the trial court's denial of the motion to sever" where "numerous witnesses called by the State … identified [the defendant] as the person who shot the victim"). See also *McClendon v. State*, 299 Ga. 611, 615 (2016) (holding that the defendant failed to make the required showing of prejudice in part because it was "highly unlikely that the evidence admitted against his co-defendants was improperly considered against [the defendant], especially since there was overwhelming evidence that the defendants knew one another and acted in concert to murder the victim").

Finally, as to Rucker's contention that the defenses became antagonistic,[7] Rucker argues that he was prejudiced because he could not cross-examine Simmons because Simmons did not testify and because the trial court restricted the scope of his closing argument; Rucker also claims that because the trial was not severed he was forced to call attention in closing argument to Simmons's statements that, he claims, were inadmissible against

---

[7] Specifically, Rucker argues that "[b]ased on the trial court's admission of Simmons's admissions to Woodard, the defenses became antagonistic—Rucker was necessarily antagonistic to Simmons because Simmons confessed the robbery."

Rucker.[8] At closing, the trial court prevented Rucker from discussing statements made by Simmons to officers because those statements were not admitted into evidence, but the trial court allowed Rucker to argue in closing that Woodard's testimony was merely "repeating what the officers had told her, which is their theory of the case, which is the State's case." Even assuming that Rucker's co-defendants raised antagonistic defenses, this does not amount to the required level of prejudice. "[A] defendant must do more than raise the existence of antagonistic defenses to demonstrate that the trial court abused its discretion in denying a motion to sever." *Ivory*, 322 Ga. at 320 (citation and quotation marks omitted). And here, given the numerous witnesses identifying Rucker as the shooter, Rucker has not shown prejudice from antagonistic defenses such that the trial court abused its discretion in denying his motions to sever. See *Rivers*, 283 Ga. at 4. Rucker has failed to demonstrate that the trial court abused his discretion in denying his motions to sever, so this claim fails.

*Case No. S26A0036*

5. Simmons claims that the evidence at trial was insufficient to sustain his convictions. This claim fails.

"On appeal, it is the defendant's burden to show that the trial evidence was insufficient as a matter of constitutional due process to support his convictions." *Charles v. State*, 315 Ga. 651, 653 (2023). Simmons did not carry his burden here.

---

[8] Rucker does not raise an argument on appeal that his Sixth Amendment rights were violated under *Bruton*, and we rejected co-defendant Ivory's argument that Woodard's statements recounting Simmons's statements to her after the shooting violated Ivory's Sixth Amendment rights under *Bruton*. See *Ivory*, 322 Ga. 318–19.

The entire argument section of Simmons's brief spans less than a single page and reads in full as follows:

> The most fundamental principle upon which our criminal law exists is that "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).

> Mr. Simmons hereby challenges the evidence presented by the State as insufficient to support his convictions in this case. Mr. Simmons respectfully requests this Court to review the trial court's determination that the evidence presented at trial was sufficient to sustain his convictions.

Simmons has not articulated why the trial evidence was insufficient to support his convictions nor formulated an argument showing that the trial evidence failed to prove an essential element of any crime charged beyond a reasonable doubt. See *Charles*, 315 Ga. at 654. Accordingly, Simmons has not carried his burden on appeal, and this claim fails. See id. at 654–55 (holding that the defendant failed to carry his burden on appeal where the defendant "cite[d] *Jackson*, assert[ed] 'that the State did not prove its charge beyond a reasonable doubt,' and 'ask[ed] th[is] Court to reverse' his convictions" but did not "articulate[] why he contends that the trial evidence was insufficient to support his convictions, much less formulate[] an argument" on that claim (fourth alteration in original)).

*Judgments affirmed. All the Justices concur.*

21